**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Trustees of Ohio Bricklayers                              Case No. 1:13cv93
Health and Welfare Fund, *et al.*,

       Plaintiffs,                                        Judge Michael R. Barrett

       v.

Ardit Company, *et al.*,

       Defendants.

## OPINION & ORDER

This matter is before the Court upon Plaintiffs' Motion for Summary Judgment (Doc. 23) and Defendants' Motion for Summary Judgment (Doc. 24). Both motions have been fully briefed. (Docs. 27, 28, 29, 30).

### I.    BACKGROUND

Plaintiffs are the Trustees of Ohio Bricklayers Health and Welfare Fund, Trustees of the Bricklayers and Trowel Trades International Pension Fund, Trustees of the International Masonry Institute, Trustees of the Bricklayers and Allied Craftworkers Local No. 55 Pension Fund, Trustees of the Bricklayers and Allied Craftworkers Local No. 55 Voluntary Employees Beneficiary Association, and Trustees of the Bricklayers Local Union No. 55 Joint Apprenticeship Training Fund ("Funds"). The Funds are multi-employer plans under Section 3(37)(A) of Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(37)(A).

The Funds are maintained under collective bargaining agreements ("CBAs") between the Bricklayers and Allied Craftworkers Local No. 18, the Bricklayers and Allied

Craftworkers Local No. 55 and Defendant The Ardit Company ("Ardit").  Ardit specializes in installing tile, terrazzo and stone.  (Doc. 24-1, Joint Stip., ¶ 1).  Michele Johnson is the President of Ardit and 10% owner.  Johnson handles the day to day operations of the company.  (Doc. 24-2, Michele Johnson Decl., ¶ 1).  Defendant Norma Martina is Secretary-Treasurer of Ardit and 90% owner.  (Doc. 24-3, Norma Martina Decl., ¶ 1)

Ardit was a member of the Tile, Marble and Terrazzo Contractors Association of Greater Cincinnati which negotiated several CBAs with Local 18 on behalf of Ardit, including a Section 8(f) Agreement between Ardit and Local 18 which was effective through August 31, 2014 ("2012 Local 18 CBA").  (Joint Stip., ¶ 4; Doc. 23-1, Freddie Hubbard Decl., ¶ 5).  The Sixth Circuit has explained the nature of an agreement under Section 8(f) of the NLRA:

> As general rule, it is an unfair labor practice under [29 U.S.C. § 158(a)(1) & (2); National Labor Relations Act ("NLRA")] sections 8(a)(1) and (2) for an employer, and under [29 U.S.C. § 158(b)(1)(A); NLRA] section 8(b)(1)(A) for a union, to enter into a collective bargaining agreement when only a minority of employees has chosen the union as its bargaining representative.  However, under [NLRA] section 8(f) [29 U.S.C. § 158(f)] there is an exception for the construction industry because of special factors, such as the "uniquely temporary, transitory, and sometimes seasonal nature" of much of the work in that industry.  Specifically, section 8(f) allows employers and unions in the construction industry to enter into labor agreements (commonly called "prehire" agreements) before a majority of employees has approved the union as its bargaining representative.  These section 8(f) agreements are voluntary[.]  *Local Union No. 666 v. Stokes Electrical Service, Inc.*, 225 F.3d 415, 418-19 (4th Cir. 2000) (citations omitted).

*Sheet Metal Workers, Int'l Ass'n, Local Union No. 24 v. Architectural Metal Works, Inc.*, 259 F.3d 418, 421 n.1 (6th Cir. 2001) (quoting *Local Union No. 666 v. Stokes Electrical Service, Inc.*, 225 F.3d 415, 418-19 (4th Cir. 2000) (citations omitted)).

The 2012 Local 18 CBA contained a "travelling contractor's" clause which allowed

2

Ardit to perform work in other geographic jurisdictions beyond that of the jurisdiction of Local 18. (Doc. 23-5, PAGEID # 326). Ardit performed work within the geographic jurisdiction of Local 55 between the months of September 2012 and December 2014. (Doc. 23-1, Freddie Hubbard Decl., ¶ 8).

On May 31, 2011 Ardit sent correspondence to Local 18 terminating the 2012 Local 18 CBA, which expired by its terms on August 31, 2012. (Joint Stip., ¶ 4). In November of 2011, Ardit informed its employees that it was going to implement new terms and conditions of employment when the 2012 Local 18 CBA expired on August 31, 2012. (Joint Stip., ¶ 8).

On June 26, 2012, Local 18 filed a filed a representation petition.  (Joint Stip., ¶ 9). On August 10, 2012, Ardit's employees voted to retain Local 18 as their representative in an NLRB election. (Joint Stip., ¶ 9). Ardit raised timely objections to the election. (Joint Stip., ¶ 14).

On September 1, 2012—while the objections to the election were pending—Ardit implemented the previously-announced new terms and conditions of employment: Ardit changed its employees' wages, made revisions to their health insurance, ceased contributing to the Union's pension plan and implemented flexible spending accounts, profit sharing and a 401(k) plan. (Joint Stip., ¶ 10).

After several rounds of review by the National Labor Relations Board, Ardit's objections to the election were overruled. (Joint Stip., ¶ 14). On May 3, 2013, Local 18 was certified as the representative of the bargaining unit. (Joint Stip., ¶ 14).

Ardit has not made any pension contributions to the Funds since September 1, 2012. Ardit claims the company lawfully terminated the Local 18 CBA, and therefore the

company was no longer contractually obligated to make any contributions to the Fund. (Id., ¶4.)

The Funds claim that by failing to make required contributions to the Funds, Defendants have breached the CBA and plan documents in violation of Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185. The Funds also claim Johnson and Martina are fiduciaries under Sections (21) and (14) of ERISA. The Funds claim that Johnson and Martina breached their fiduciary duties by failing to make employer contributions to the Funds and are personally liable the contributions. The Funds seek a monetary judgment for the amount of unpaid contributions, costs, interest, and liquidated damages. The Funds also seek an award of attorney fees.

## II. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). These standards upon which the court evaluates motions for summary judgment do not

change simply because the parties present cross-motions. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

### B. Termination of the Local 18 CBA

The Funds argue that Ardit's termination of the CBA was precluded as a result of the election and certification. The Funds explain that the 2012 Local 18 CBA was converted from a pre-hire agreement under Section 8(f) of the NLRA to a full CBA under Section 9(a). The Funds explain that as a result, Ardit did not have legal right to make unilateral changes to conditions of employment. Ardit responds that while the election occurred before the expiration of the 8(f) agreement, Local 18 did not become the certified 9(a) representative until after the 8(f) agreement expired. Therefore, according to Ardit, Ardit did not have any bargaining obligations with Local 18 at the time it implemented changes to the terms and conditions of employment.

However, the employer's obligation to bargain before making changes commences not on the date of the certification, but on the date of the election. *Ramada Plaza Hotel*, 341 NLRB 310, 316 (2004). "[A]bsent compelling economic considerations for doing so, an employer acts at its peril in making changes in terms and conditions of employment during the period that objections to an election are pending and the final determination has not yet been made." *Mike O'Connor Chevrolet*, 209 NLRB 701, 703 (1974).

Ardit attempts to distinguish this situation by pointing out that it made the decision to change the terms and conditions of employment and announced those changes to employees before the election. In support of this position, Ardit relies on *SGS Control Services, Inc.*, 334 N.L.R.B. 858, 861 (2001). However, the union in *SGS Control* was

not a 8(f) representative before obtaining 9(a) status, and therefore there was no collective-bargaining relationship in place. Ardit could have only made the announced changes when the Local 18 CBA expired on August 31, 2012. However, on August 10, 2012, Ardit's employees elected Local 18 as their representative, and from that point forward, the parties relationship was governed by Section 9(a). *Accord Hargrove Elec. Co., Inc. & Int'l Bhd. of Elec. Workers, Local Union 20 Alman Constr. Servs., Lp & Int'l Bhd. of Elec. Workers, Local Union 20 Boggs Elec. Co., Inc. & Int'l Bhd. of Elec. Workers, Local Union 20*, 358 NLRB No. 147, *1, n.1 (Sept. 26, 2012) (employer obligated to bargain with the union at all times where the union was certified during the term of the 8(f) agreement because "[f]rom that point forward, the parties' relationship was governed by Sec. 9(a), and the Respondents were precluded from acting unilaterally at the expiration of the agreement."). Therefore, after the date of the election, Ardit's bargaining obligations under 9(a) of the Act were triggered. It made no difference that Ardit had previously announced that it was going to implement new terms and conditions of employment when the 2012 Local 18 CBA expired on August 31, 2012. Even though Ardit filed objections to the election, Ardit acted "at its peril" when it implemented those changes on September 1, 2012. In effect, Ardit's obligation to bargain commenced on the date of the election—August 10, 2012—and Ardit was precluded from making unilateral changes in the terms and conditions of employment at the expiration of the 2012 Local 18 CBA.

Accordingly, Ardit was required to pay contributions to the Funds for work performed within Local 55's jurisdiction pursuant to the travelling contractor's clause in the 2012 Local 18 CBA. The failure to make contributions was a violation of ERISA, 29

6

U.S.C. § 1145, which provides: "[e]very employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement."

### C. Fiduciary duties under ERISA

The Funds argue that Johnson and Martina are personally liable for the contributions owed to the Funds as a result of the breach of their fiduciary duties under ERISA.

ERISA defines a fiduciary as any person who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). Under ERISA, a fiduciary who breaches a fiduciary duty can be held personally liable to the plan for losses caused by the breach. 29 U.S.C.A. § 1109 ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . ." ).

The Funds explain that language contained in the Trust Agreements establishes that unpaid fringe benefit contributions are plan assets at the time they become due. However, "the Sixth Circuit Court of Appeals has not yet squarely addressed the issue of when employer contributions become plan assets." *Trustees of Michigan Reg'l Council of Carpenters' Employee Benefits Fund v. H.B. Stubbs Co.*, 33 F. Supp. 3d 884, 890 (E.D. Mich. 2014).

7

Ardit argues that regardless of whether the unpaid contributions were plan assets, Johnson and Martina are not fiduciaries under ERISA. Ardit relies on *Sheet Metal Local 98 Pension Fund v. AirTab, Inc.*, No. 09–3121, 482 F. App'x 67 (6th Cir. May 29, 2012). In *AirTab*, the court held that the owner and president of the company and a "coordinator" for the company were not fiduciaries under ERISA. The Sixth Circuit explained that the individual defendants were "not defined as fiduciaries in any documents" governing the ERISA plans, and thus were not "made aware of their potential status as fiduciaries." *Id.* at 69 (citing *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1015 (11th Cir. 2003) ("a person should not be attributed fiduciary status under ERISA and held accountable for performance of the strict responsibilities required of him in that role, if he is not clearly aware of his status as a fiduciary.")).

The Sixth Circuit also explained that "'[m]ere possession or custody' over a plan's assets does not automatically lead to fiduciary status." *Id.* (quoting *Briscoe v. Fine*, 444 F.3d 478, 494 (6th Cir. 2006)). The court noted that the facts showed only that the individual defendants had refused to make the employee fringe benefit contributions called for under a collective bargaining agreement. *Id.* The court explained that "an employer cannot become an ERISA fiduciary merely because it breaches its contractual obligations to a fund." *Id.* (quoting *In re Luna*, 406 F.3d 1192, 1203-204 (10th Cir. 2005)). The court then made this distinction: "This is not a situation where employers decided to funnel monies from a general account toward paying off company creditors instead of to beneficiaries." *Id.* at 70 (citing *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997).

The Funds argue that this is a situation where the employer decided to funnel

8

monies from a general account toward paying off company creditors. The Funds explain that Ardit used a single checking account to pay bills and make payments to the Funds. (Doc. 23-18, Michele Johnson Dep. at 91-92). The Funds accuse Johnson and Martina of paying other creditors instead of making contributions to the Funds. The Funds argue that using the contributions for other expenses was a breach of fiduciary duty. *Accord Trustees of Iron Workers' Local No. 25 Pension Fund v. Mun. & Indus. Storage, Inc.*, No. 2:10-CV-12502-PDB, 2011 WL 1515047, at *4 (E.D. Mich. Mar. 24, 2011) ("Financing company operational expenses with plan assets (unpaid contributions) is a misappropriation of those assets and constitutes a breach of the fiduciary's duties.").

However, the Court concludes that like the claim in *AirTab*, the Funds' breach of fiduciary claim is merely a restatement of the Funds' breach of contract claim against Ardit. The Funds have not shown that Johnson and Martina elected to use the contributions to pay creditors. *See e.g, Trustees of Detroit Carpenters Fringe Ben. Funds v. Nordstrom*, 901 F. Supp. 2d 934, 942 (E.D. Mich. 2012) (sole owner can be held personally liable for unpaid contributions where he elected to pay general creditors instead of making contributions to funds). Instead, Ardit refused to make contributions because it maintained it had no obligation to do so after the 2012 Local 18 CBA expired. While this Court has determined that Ardit's obligation continued beyond the CBA's expiration, that determination is a question of contract law, and does support a breach of fiduciary duty. *Accord Teamsters-Ohio Contractors Ass'n Health & Welfare Fund v. Tauro Bros. Trucking Co.*, No. 3:10 CV 703, 2013 WL 1303821, at *6 (N.D. Ohio Mar. 28, 2013) (principal of company not personally liable; whether the mathematical formula principal used to estimate hours resulted in an underpayment of fringe benefits is a

question which "sounds in contract law and it extends ERISA fiduciary law too far to create a fiduciary breach even if [the principal's] calculation was flawed and caused an underpayment."). Because Johnson and Martina were not acting as fiduciaries under ERISA, Johnson and Martina cannot be held personally liable for the unpaid contributions.

### III. <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs' Motion for Summary Judgment (Doc. 23) is **GRANTED** and Defendants' Motion for Summary Judgment (Doc. 24) is **DENIED**. It is hereby **ORDERED** that:

1. The Clerk enter judgment in favor of Plaintiffs and against The Ardit Company in the amount of $258,724.80, which represents unpaid fringe benefit contributions found to be due and owing through December 31, 2014, and the liquidated damages and interest found due and owing through April 1, 2015 under the applicable collective bargaining agreements and ERISA;

2. The Ardit Company shall make available to Plaintiffs' auditor the books and records necessary to calculate unpaid fringe benefit contributions, interest, and liquidated damages for the period January 1, 2015 through present, along with any additional liquidated damages and interest for contributions which remain unpaid, with the cost of such audit being paid by The Ardit Company; and

3. The Funds shall file a properly supported motion for attorneys' fees, costs, and audit fees pursuant to 29 U.S.C. §1132(g)(2)(D) within **fourteen (14) days of this Order** on this motion.

4. This matter is CLOSED and TERMINATED from the active docket of this Court.

**IT IS SO ORDERED.**

                                               */s/ Michael R. Barrett*
                                               Michael R. Barrett
                                               United States District Judge